UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT R. STACHURA, JR.,                          Case No. 12-13078

          Plaintiff,                          Lawrence P. Zatkoff
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Michael Hluchaniuk
                                                  United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 19)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On July 12, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Lawrence P.

Zatkoff referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for supplemental security

income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 15, 19).

### B.   Administrative Proceedings

Plaintiff filed the instant claim on September 16, 2008, alleging that he

became disabled beginning April 1, 1994. (Dkt. 10-2, Pg ID 62). The claim was initially disapproved by the Commissioner on July 26, 2009. (Dkt. 10-2, Pg ID 62). Plaintiff requested a hearing and on June, 2010, plaintiff appeared with a representative before Administrative Law Judge (ALJ) Roy L. Roulhac, who considered the case de novo. In a decision dated September 13, 2010, the ALJ found that plaintiff was not disabled. (Dkt. 10-2, Pg ID 62-74). Plaintiff requested a review of this decision. The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on May 15, 2012, denied plaintiff's request for review. (Dkt. 10-2, Pg ID 34-36); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** part, and that the findings of the Commissioner be **REVERSED** in part and **AFFIRMED** in part, and that this matter be **REMANDED** for further

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

proceedings under sentence four.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 42 years of age at the time of the most recent administrative hearing.  (Dkt. 10-2, Pg ID 64).  Plaintiff has no past relevant work.  *Id*.  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the application date.  *Id*.  At step two, the ALJ found that plaintiff's sarcoidosis, organic mental disorder, history of post-traumatic stress disorder, chronic obstructive pulmonary disease, status post stroke with residual right side weakness, and obstructive sleep apnea were "severe" within the meaning of the second sequential step.  (Dkt. 10-2, Pg ID 64).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  The ALJ concluded that plaintiff has the following residual functional capacity

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as described in 20 CAR 416.967(a) except the claimant can lift or carry no more than 10 pounds frequently and 10 pounds occasionally (from very little, up to 113 or an 8-hour workday); the claimant can stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; the claimant can sit (with normal breaks) for a total of 2 hours in an 8-hour workday; can perform pushing and pulling motions with the left upper and

Report and Recommendation
Cross-Motions for Summary Judgment
*Stachura v. Comm'r*; Case No. 12-13078

>lower extremities within the aforementioned weight
>restrictions; can occasionally climb ramps and steps,
>balance, stoop, crouch, kneel, and crawl; should avoid
>unprotected heights and chemicals; should be restricted
>to a "relatively clean" work environment (with low levels
>of pollutants such as dust, fumes, and gases, and stable
>temperatures, avoiding extreme heat and cold); the
>claimant requires work that is limited to simple tasks;
>low stress with only occasional decision making required
>and only occasional changes in the work setting; with
>only occasional interaction with coworkers and
>occasional contact with the public.

(Dkt. 10-2, Pg ID 66).  At step four, the ALJ found that plaintiff had no past

relevant work.  (Dkt. 10-2, Pg ID 72).  At step five, the ALJ concluded that,

considering plaintiff's age, education, work experience, and RFC, there are jobs

that exist in significant numbers in the national economy that plaintiff can perform.

*Id*.

### B.    Plaintiff's Claims of Error

Plaintiff first argues that the ALJ did not properly evaluate his impairments

under Listings 1, 3 and 12.  While the ALJ concludes that plaintiff had only mild

restrictions in the "B" criteria as to Listings 12.02 and 12.04, plaintiff contends that

no such evaluation was made as to Listing 1.0 or 3.0, which have different "B"

criteria.  Plaintiff also indicates that it is totally unclear what listings the ALJ was

referring to under 1.0 and 3.0.  Moreover, plaintiff argues that the ALJ should have

actually evaluated plaintiff's condition(s) under Listed Impairments § 11.04,

Central Nervous System Vascular Accident, and § 12.06, Anxiety-Related Disorders because the record clearly reflects that plaintiff suffered from two strokes within one year of each other.  The first stroke affected his left side, from which he made a recovery; the second stroke affected his right side, and left residuals of right-sided weakness causing plaintiff to have numbness, balance problems, resulting in falling on occasion.  Plaintiff says he has also had problems with defecating in his clothing because of inability to control his bowels, and with slurred speech.

While the ALJ did not mention in his decision the issue of plaintiff's obesity, plaintiff says it is clear from the record that he should have, given his problems with his weight, despite attempting to exercise.  Plaintiff's weight fluctuated, starting in January 2007 at 278 pounds (Tr. 274); 262 lbs. in November 2007 (Tr. 275); 259 lbs. on December 5, 2007 (Tr. 278) to 289 lbs. on July 23, 2008 (Tr. 280) and 285 lbs. on April 15, 2009 (Tr. 378); and finally 310 lbs. on March 17, 2010 (Tr. 390).

Plaintiff also contends that the ALJ's credibility analysis is flawed.  The ALJ discredited plaintiff's testimony, both verbal and written, saying some parts were "inconsistent" and that plaintiff had shared that he was able to do many things, which would be incongruous with being disabled.  According to plaintiff, it must be remembered that the ALJ, himself found that he had the "severe impairment" of

"organic mental disorder." While recognizing this in his severity finding, plaintiff says that the ALJ seemed to forget this when assessing the claimant's credibility. Although the ALJ stated that plaintiff could take care of his personal needs, cook and clean and do laundry "without assistance," plaintiff contends that the record reflects that he receives a great deal of assistance from his father, and that plaintiff has a "need" to present himself in a "normal" fashion, as he feels "shame" at having others know his difficulties.

Plaintiff also points out that the ALJ incorrectly references Dr. Khan, instead of Urvashi Bhan, as being the pulmonologist that he was seeing. Dr. Khan, on the other hand, was a non-examining, non-treating physician who reviewed plaintiff's case for the State Agency. Nevertheless, the ALJ recited that plaintiff "alleges use of his inhalers 5-6 times a day, but unilaterally discontinued using his Advair and Albuterol previously and reported scant breathing problems to Dr. Khan, who found the claimant's condition stable." (Tr. 33). In contrast, plaintiff cites records from Dr. Bhan dated March 17, 2010, approximately 2 ½ months prior to his administrative hearing, in which Dr. Bhan documented that plaintiff "reports that his breathing is also difficult and he feels that he has chronic fatigue all the time … does have shortness of breath on exertion ... ." (Tr. 390).

Next, the ALJ negatively noted that "discontinued his C-PAP usage." (Tr. 33-34). However, the ALJ did not mention the notation from May 2009 wherein

Dr. Amer Arshad, a consulting examiner, noted that plaintiff "has severe sleep apnea and is supposed to be using a CPAP but it is difficult to keep on." (Tr. 305). The ALJ then admonished plaintiff for not seeking treatment for his various physical ailments, being evaluated at the U of M only once per year.  The ALJ opined: "When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that the claimant will seek examination and treatment. The failure of the claimant to seek examination and treatment for the condition reflects poorly on the credibility of the claimant and the assertions that the condition is disabling."  (Tr. 34).  Plaintiff points out, however, that he has been maintained on the same medications since his conditions arose.  He continues to have the same problems, for which there is no "cure," and thus follow-up on his debilitating conditions does not need to be on a more frequent basis, as can be seen by the records and reports from the University of Michigan.

More importantly, however, plaintiff says that his mental impairment must be kept in mind, with his judgment concerning his own condition possibly not being the most optimum.  The Sixth Circuit has addressed the issue of non-compliance by psychiatric patients, with respect to claimants who may fail to seek psychiatric treatment [in the case at bar, physical treatment] for their mental [or physical, as herein] condition, stating "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking out

treatment." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

Plaintiff also points out that the ALJ again cited to a Dr. Khan, this time presumably to the non-examining/non-treating physician, who stated that the claimant "had not presented with complaints of panic attacks, yet alleged having five such attacks a week." (Tr. 36). According to plaintiff, the same explanation holds in this regard, with plaintiff having problems with his memory, due to the two strokes that he had experienced, and the "severe impairment" of organic mental disorder. Further, even the mental status examination plaintiff underwent with Ms. Kenna and Dr. Kovach [for the State Agency], he could only recall "one of three objects in three minutes." (Tr. 300). That portion of the mental status exam specifically tests memory, which was clearly deficient in plaintiff's case. Thus, plaintiff maintains that substantial evidence does not support the ALJ's credibility assessment with respect to plaintiff's allegations of the severity of symptoms he experiences, both physically and mentally.

Plaintiff also contends that the ALJ does not cite to a particular record or doctor for the proposition that plaintiff just needed a "relatively clean" work environment. According to plaintiff, a more restrictive environmental limitation is proposed by the consulting examiner, Leonidas Rojas, M.D., who evaluated Robert on December 22, 2008, and opined that "due to his pulmonary problems he would not be able to perform well when exposed to temperature changes, polluted

environment, etc." (Tr. 295). Dr. Rojas did not more narrowly define those parameters as avoiding "extreme heat and cold;" he specifically limited Robert to being unable to perform well when exposed to "temperature changes." Dr. Rojas also did not indicate that plaintiff should avoid "high levels of pollutants;" he specifically stated that plaintiff could not work well in a "polluted environment." According to plaintiff, the ALJ more narrowly defined this, incorrectly, as being able to work with "low levels of pollutants." (Tr. 33). Plaintiff contends that the ALJ did not give any reasons for declining to accept Dr. Rojas' opinion in regard to these limitations.

With regard to plaintiff's mental impairments, his long-term treating psychologist, Dr. Bajon, submitted a Mental Residual Functional Capacity Assessment, based on his treatment of plaintiff over many years, throughout the time Robert acquired his various physical impairments, along with his mentally traumatic experiences. The ALJ "assigned" "little weight to the opinion of Dr. Bajon," stating that Dr. Bajon "did not provide an objective analysis of the claimant's psychological condition" and finding that this opinion is inconsistent with the record as a whole. (Tr. 38).

Additionally, there was a psychological evaluation by mental health professionals chosen by the State Agency, specifically Ms. Suzann Kenna, and Judith Kovach, Ph.D., who assigned a GAF score of 40 to plaintiff's condition on

Axis V of their diagnoses.  (Tr. 301).  The consulting examiners also opined that plaintiff "would not be able to work even in a restricted environment that involves even brief, superficial interactions with coworkers, supervisors and the public.  He has a low frustration tolerance which evidences in angry outbursts.  In general he is not employable."  (Tr. 300).  Plaintiff contends that the ALJ improperly rejected this opinion, because it did not comport with his own assessment of the plaintiff's capabilities and limitations.

Plaintiff also points to record evidence showing that he has right-sided weakness as a residual from his second stroke.  Consulting examiner, Dr. Rojas, noted that plaintiff "would not be able to perform in occupations requiring a great deal of dexterity of his right upper limb."  (Tr. 295).  This limitation, was not mentioned in the ALJ's hypothetical question.  The ALJ merely stated that plaintiff would be unable to perform work that involved "pushing and pulling with the left [should have been right] upper and lower extremities."  (Tr. 66).  There is nothing mentioned about frequent and repetitive dexterous use of the upper extremity.  Plaintiff also argues that the vocational expert noted the job of "surveillance system monitor," to the hypothetical requiring "simple tasks" … "sedentary unskilled." (Tr. 66-67).  However, the SVP for surveillance system monitor is "3."  And, according to the Administration, an SVP level of 3 is considered to be "semi-skilled" work.  Social Security Ruling (SSR) 00-4p.  When the ALJ said

"simple work," plaintiff contends that the vocational expert understood that to mean "unskilled" work, and thus, her answers to these hypothetical questions were flawed.

      C.    <u>The Commissioner's Motion for Summary Judgment</u>

Plaintiff argues that the ALJ did not sufficiently explain the rationale for why his impairments did not satisfy Listing 1.00 or 3.00. Contrary to plaintiff's assertion, the Commissioner contends that the ALJ explained that his step-three finding was supported by the medical opinions of state agency and consultative physicians. (Tr. 31). In May 2009, Amer Arshad, M.D., an internal medicine doctor, evaluated plaintiff. Plaintiff's lungs showed coarse breath sounds, but "good air entry bilaterally." (Tr. 306). Plaintiff had slight weakness in his right arm and limped, but his left side was normal. (Tr. 306). Dr. Arshad diagnosed plaintiff with sarcoidosis, a "history of factor V latent mutation with stroke and right-sided weakness," sleep apnea, chronic fatigue, and PTSD. (Tr. 36). The following month, state agency physician Delois D. Daniels, M.D., an internal medicine doctor, reviewed plaintiff's medical record, including Dr. Arshad's report, and opined that plaintiff remained capable of working at a light exertional level despite his impairments. (Tr. 311). Dr. Daniels found that plaintiff could lift twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour day; and stand/walk for about six hours in an eight-hour day. (Tr. 311).

Thus, the Commissioner contends that Dr. Arshad's examination findings and Dr. Daniels's opinion are substantial evidence in support of the ALJ's finding that Plaintiff's physical impairments did not meet or equal Listings 1.00 or 3.00.

Plaintiff also argues that the ALJ erred by failing to discuss whether his impairments satisfied the Listing for a Central Nervous System Vascular Accident (Listing 11.04). The Commissioner points out, however, that "[t]his court will not, however, overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. Such an error is harmless where 'concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled . . . .'" *Andrews v. Comm'r of Soc. Sec.*, 2013 WL 2200393, *12 (E.D. Mich. 2011), quoting Juarez v. Astrue, 2010 WL 743739, at *5-6 (E.D. Tenn. 2010). Listing 11.04 requires that the claimant have central nervous system vascular accident (i.e., a stroke) with one of the following more than three months after the stroke: A. Sensory or motor aphasia resulting in ineffective speech or communication; or B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. Plaintiff had two strokes, the first in 1995 and the second in 1996 (Tr. 298), but, according to the Commissioner, his medical record fails to establish either of the remaining criteria. With respect to the first criterion, plaintiff had

slurred speech following his second stroke (Tr. 287, 298), but the record fails to establish that plaintiff's speech difficulties rose to the level of being "ineffective." According to the Commissioner, no treating or other medical source found that plaintiff had ineffective speech or communication. Plaintiff was consistently able to speak with his doctors and his thoughts were "logical and organized when he speaks." (Tr. 299). At the administrative hearing, plaintiff was able to understand and respond to the ALJ's questions without difficulty. The Commissioner also points out that when plaintiff applied for benefits, he did not have any difficulty reading, understanding, talking, answering questions, or have any difficulty with coherency. (Tr. 155). Plaintiff's reports that he had friends and spent time with his father in person or by phone further undermines his allegations. (Tr. 180, 185). The Commissioner contends that, therefore, plaintiff has not shown that his impairment caused ineffective speech or communication.

In addition, the Commissioner contends that plaintiff does not meet the criteria set forth under paragraph B of Listing 11.04. The ALJ recognized that plaintiff had a stroke and resulting weakness in his right side. (Tr. 31). The record, however, fails to show "significant and persistent disorganization of motor function" in at least two extremities. In January 2007, almost ten years after his second stroke, plaintiff reported that he was feeling well with no complaints and his extremities were "warm and well perfused." (Tr. 274). He was working as a

mechanic, lived by himself, and was not in apparent distress. (Tr. 274). In November 2007, plaintiff injured himself after falling, but by December 2007, he had improved; he was doing well and exercised by walking daily and his treating doctor, Urvashi Bhan, M.D., did not note any abnormalities with respect to his extremities. (Tr. 278). In July 2008, plaintiff stated that he was doing "extremely well" and was exercising to lose weight. (Tr. 280). On examination, plaintiff did not display any problems with his extremities. (Tr. 280). In December 2008, Leonidas Rojas, M.D., evaluated plaintiff's physical condition. Dr. Rojas noted that plaintiff had no difficulty standing and could get on and off the examination table without difficulty. (Tr. 295). Plaintiff walked with a mild limp, but he was able to walk without assistive devices. (Tr. 295). Dr. Rojas noted normal findings with respect to plaintiff's extremities; he was able to perform fine and gross manipulation and had normal pulses in his feet. (Tr. 295). Plaintiff's muscle tone was normal without sensory deficit, tremors, or gross muscle atrophy. (Tr. 295). In May 2009, Dr. Arshad found only "slight weakness" in plaintiff's right arm. (Tr. 206). In June 2009, Dr. Daniels found that plaintiff could lift twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour day; and stand/walk for about six hours in an eight-hour day. (Tr. 311). In August 2009, Dr. Amneet Sandhu, who treated plaintiff twice, noted that plaintiff had weakness on his right side, but that he could still stand/walk for about two hours in an

Report and Recommendation
Cross-Motions for Summary Judgment
*Stachura v. Comm'r*; Case No. 12-13078

eight-hour day, sit for about six hours in an eight-hour day, and would have some manipulative limitations on his right side.  (Tr. 382-83).  Dr. Sandhu also stated that plaintiff would not need an assistive device to walk.  (Tr. 383).  Based on this evidence, the ALJ agreed that plaintiff had obvious limitations that affected the use of his arms and legs; however, the record does not demonstrate that plaintiff had "sustained disturbance of gross and dexterous movement, or gait and station." Thus, the Commissioner contends that plaintiff has not shown that his impairments satisfied the criteria for Listing 11.04.

The Commissioner also argues that the ALJ properly evaluated whether plaintiff's depression met or equaled a listing for a mental disorder (Listing 12.00) by applying the "special technique." (Tr. 32).  Under the special technique, an ALJ must determine whether a plaintiff's mental impairment causes at least two of the following: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an extended duration.  The ALJ found that plaintiff's mental impairments caused mild limitations on his activities of daily living; mild limitations on his social functioning; moderate restrictions on his concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 32).  Because plaintiff's impairment did not result in marked limitations or repeated episodes of decompensation, the ALJ

found that plaintiff's impairment did not meet or equal a listing. (Tr. 19-20).

Plaintiff contends that his impairments created more than mild limitations on his

activities of daily living and social functioning. Plaintiff argues that because it

takes him additional time to perform activities and because he only socializes with

his father, he had greater than mild limitations. The Commissioner contends,

however, that plaintiff has not cited any authority indicating that these difficulties

would be the type of "marked" limitations one would expect of a disabled person.

In any event, the Commissioner also contends that plaintiff's assertions conflict

with the evidence. Although plaintiff performed at a slower pace, plaintiff lived by

himself and could perform all his personal needs and other household activities.

(Tr. 177, 186-87). He prepared simple meals, drove, managed his own finances,

and shopped. (Tr. 177-79). Plaintiff's father also reported that his son did not

have problems getting along with family, friends, neighbors, or others, and that he

watched movies with his friends. (Tr. 189-90). Based on this evidence, the

Commissioner argues that the ALJ reasonably concluded that plaintiff's

impairments did not produce more than mild limitations on his activities of daily

living or social functioning. (Tr. 32).

The ALJ summarized plaintiff's complaints concerning his alleged pain and

breathing difficulties. (Tr. 33). The ALJ agreed that plaintiff had obvious

limitations, but not any more than provided by his residual functional capacity

(RFC) assessment. (Tr. 33). According to the Commissioner, the ALJ acknowledged that plaintiff had obvious limitations and limited him to sedentary work with postural, mental, and environmental limitations. (Tr. 33). Specifically, the ALJ restricted plaintiff to only pushing and pulling with his left upper and lower extremities; only occasionally climbing ramps and steps, balancing, stooping, crouching, kneeling, and crawling; should avoid unprotected heights and chemicals; should be restricted to a "relatively clean" work environment" (with low levels of pollutants such as dust, fumes, and gases, and stable temperatures, avoiding extreme heat and cold); limited to simple tasks; low stress with only occasional decision making required; only occasional changes in the work setting; and only occasional interaction with coworkers and the public. (Tr. 33).

In evaluating plaintiff's credibility, the Commissioner contends that the ALJ reasonably noted that plaintiff provided testimony inconsistent with the medical evidence. (Tr. 35). For example, plaintiff stated that he had difficulty breathing and that he used his inhaler up to six times per day and used Advair twice per day, but the medical record shows that he discontinued using Advair and albuterol as early as December 2007. (Tr. 59, 278); 20 C.F.R. § 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."). Even if plaintiff used his medication as prescribed by the time of his hearing, he did not consistently follow his doctor's

recommendations during the period he claims he was disabled.  As plaintiff points out, the ALJ mistakenly stated that Plaintiff "reported scant breathing problems to Dr. Khan."  (Tr. 33).  Plaintiff actually made these statements to Dr. Bhan.  (Tr. 274-78).  In July 2008, Dr. Bhan "stressed the importance of using Advair as directed," after plaintiff stated that he did not use Advair.  (Tr. 281).  Plaintiff's breathing problems were also exacerbated by his smoking; Dr. Bhan encouraged plaintiff to quit smoking, but as of December 2008, plaintiff admitted that he smoked one pack of cigarettes per day and occasionally smoked marijuana.  (Tr. 294).  In May 2009, plaintiff reported that he continued to smoke half a pack of cigarettes per day.  (Tr. 305).  The ALJ also noted that plaintiff complained of difficulty sleeping but had stopped using his CPAP machine.  (Tr. 33-34, citing Tr. 274).  Although Dr. Rojas noted that the CPAP machine produced some benefit (Tr. 294), plaintiff reported to Dr. Arshad that it was difficult to keep on.  (Tr. 305).  The record does not show, however, that plaintiff ever raised this concern to his treating doctor or that he sought an alternative to using the CPAP machine.  Dr. Bhan also noted that plaintiff's fatigue was attributable, in part, to plaintiff's poor sleep hygiene.  (Tr. 290).  Thus, the Commissioner contends that ALJ reasonably considered plaintiff's failure to comply with treatment recommendations as part of his credibility assessment.

The Commissioner also contends that the ALJ properly noted that there was

a significant discrepancy between what he reported to consultative examiners and how he described his condition. (Tr. 35). Plaintiff alleged that he had panic attacks up to five times per week, but this was not reflected in his medical record. In February 2009, state agency psychiatrist Edward Czarnecki, Ph.D., noted that plaintiff's allegations were not supported by the record. (Tr. 303). Dr. Czarnecki noted that plaintiff's activities of daily living suggested that he was more capable than he alleged. (Tr. 303). According to the Commissioner, the ALJ, therefore, reasonably explained that discrepancies between plaintiff's allegations and the medical records did not support giving higher weight to plaintiff's claims. (Tr. 35).

The ALJ also pointed out that plaintiff's testimony concerning his difficulty with walking was inconsistent with the evidence. Plaintiff reported that he dragged his right foot and that he would sometimes fall when his leg buckled. (Tr. 65). Plaintiff reported that he used a cane but lost it and never replaced it. (Tr. 53). The ALJ explained that it was "difficult to understand why a person who allegedly had difficulty walking and risked falling would not use an assistive device," and found that plaintiff may be overstating his symptoms. (Tr. 39).

The Commissioner also points out that while objective evidence is not the only factor relevant to determining the credibility of a claimant's symptoms, it remains a "useful indicator" for the ALJ when evaluating the credibility of

plaintiff's symptoms.  *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").  Specifically, the Commissioner points to the reports from both Dr. Arshad and Dr. Rojas, which reflect that while plaintiff had limitations on his ability to function, his conditions were not disabling.

Plaintiff also challenges the ALJ's credibility assessment and argues that the ALJ did not account for his finding that plaintiff's organic mental disorder was a severe impairment at step two of the sequential evaluation.  According to the Commissioner, plaintiff's argument reflects a misunderstanding of the five step analysis used to evaluate disability claims.  That plaintiff had a severe mental impairment does not direct a finding that he is disabled.  Significantly, the ALJ did not ignore plaintiff's mental impairment throughout the rest of the sequential evaluation; rather, the ALJ accounted for plaintiff's credible mental limitations by restricting him to simple, low stress tasks with only occasional decision making and only occasional changes in the work setting.  (Tr. 33).  The ALJ further limited plaintiff to only occasional interaction with coworkers and the public.  (Tr. 33).  According to the Commissioner, plaintiff has not shown how his condition would produce greater limitations and his disagreement with the ALJ is not a sufficient

basis to overturn the ALJ's finding.

Plaintiff also argues that he requires constant attention.  The Commissioner points out, however, that plaintiff's argument contradicts his earlier reports that he lived by himself and could function alone with little assistance.  (Tr. 59, 62). Plaintiff's father stated that he only visited his son once per week to assist with shopping.  (Tr. 185).  According to the Commissioner, that plaintiff would intentionally misstate his symptoms or limitations is further support for the ALJ's finding that plaintiff was not entirely credible.  The ALJ also noted that plaintiff behaved normally during the hearing and "did not overtly appear to be hiding any abnormality in his physical condition or his mental status."  (Tr. 38).

The ALJ also questioned plaintiff's limited treatment record, noting that there is a reasonable expectation that a claimant would seek examination and treatment if his condition was severe enough to be disabling.  (Tr. 34).  Although plaintiff alleged that he became disabled in April 1994 (prior to his two strokes), the record contains very few treatment records from before 2007.  In December 2007, doctors noted that plaintiff had not seen a primary care physician in over a year and only sought treatment for a "check-up and blood work."  (Tr. 274).  After December 2007, plaintiff visited the doctor with greater frequency, but mostly for routine visits.  Plaintiff argues that the ALJ improperly considered plaintiff's limited treatment history because more frequent doctor visits would be

unnecessary.  The regulations, however, direct an ALJ to consider the extent to which plaintiff seeks treatment, other than medication, a claimant has received for pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(v).  Thus, the ALJ reasonably noted that plaintiff's failure "to seek examination and treatment for the condition reflects poorly on the credibility of the claimant and the assertions that the condition is disabling."  (Tr. 34).

Plaintiff also contends that, because he had a mental impairment, it is impermissible for the ALJ to consider whether he sought medical treatment.  The Commissioner contends, however, that the facts of this case are distinguishable from *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989), which plaintiff cites.  In *Blankenship*, the Sixth Circuit noted that it was improper for the ALJ to consider whether plaintiff sought treatment for his psychiatric problems due, in part, to the severity of his mental condition.  *Id.*  Plaintiff has not shown that his mental condition was so severe that it would have interfered with his ability to seek treatment.  The Commissioner also points out that, after 2007, plaintiff visited the doctor for his physical impairments on a more frequent basis, undermining his claim that he was unable to seek treatment for his mental condition.  Thus, the Commissioner contends that the ALJ's decision demonstrates that he properly evaluated plaintiff's credibility, and provided specific reasons for his finding that plaintiff was not fully credible.  While plaintiff may disagree with the ALJ's

credibility assessment, he has failed to demonstrate a basis for overturning the finding, especially in light of the great weight and deference that an ALJ's credibility finding is entitled to on review.  Because the ALJ's credibility finding is supported by substantial evidence, the Commissioner maintains that it should not be disturbed.

Plaintiff also argues that the ALJ did not account for a single-line notation contained in a report from Suzanne Kenna, M.A., and Judith Kovach, Ph.D., that he could only recall one object after three minutes during a memory test.  In determining plaintiff's mental capacity, the ALJ reduced him to simple, low stress tasks with only occasional decision making and only occasional changes in the work setting.  (Tr. 33).  According to the Commissioner, plaintiff has not explained how the isolated notation contained in Dr. Kovach's and Ms. Kenna's report undermines the ALJ's RFC assessment.  The Commissioner contends that because plaintiff has failed to develop this argument further, it should be deemed waived. *See Young v. Sec'y of HHS*, 925 F.2d 146, 149 (6th Cir. 1990) (issues not raised in district court are waived); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citation and internal quotation

omitted).  Plaintiff also broadly argues that the ALJ improperly rejected Ms. Kenna and Dr. Kovach's opinion that plaintiff would be unable to work because he had a "low frustration tolerance which evidences in angry outbursts."  The Commissioner argues, however, that the ALJ gave this opinion little weight because it was not consistent with plaintiff's own reports to his treating physicians. (Tr. 35).  During his examination with Ms. Kenna and Dr. Kovach, plaintiff was in contact with reality, logical and organized when he spoke, and denied any delusions or obsessions.  (Tr. 299).  He could recall six numbers forward and four numbers backward on a test of his immediate memory.  (Tr. 300).  He could make basic calculations, think abstractly, recognize similarities and differences, and exercise judgment.  (Tr. 300).  According to the Commissioner, Ms. Kenna and Dr. Kovach failed to provide any explanation for their opinion that plaintiff would have angry outbursts.  (Tr. 300).  Thus, the Commissioner contends that the ALJ properly gave little weight to this opinion.

Dr. Rojas noted that plaintiff would not be able to perform well when exposed to extreme temperature changes or polluted environments.  (Tr. 295).  The ALJ thus restricted plaintiff to "relatively clean" working environments with low levels of pollutants "such as dust, fumes, and gases, and stable temperatures, and avoiding extreme heat and cold."  (Tr. 33).  Plaintiff contends that a difference exists between Dr. Rojas's opinion and the ALJ's RFC assessment, but according

to the Commissioner, any difference in language that the ALJ used is immaterial as the ALJ's RFC assessment remained consistent with Dr. Rojas's opinion. The Commissioner contends that the ALJ's limitation to "low levels of pollutants" does not run afoul of Dr. Rojas's restriction against working in "polluted environments." Plaintiff also argues that the ALJ did not account for Dr. Rojas's opinion that he "would not be able to perform in occupations requiring a great deal of dexterity of his right upper limb."  (Tr. 295).  The Commissioner acknowledges that the ALJ did not expressly discuss plaintiff's dexterity, but maintains that the ALJ only permitted plaintiff to pushing and pulling motions with his dominant left hand and restricted the total amount of weight that Plaintiff could carry or lift to no more than ten pounds.  (Tr. 31).  Moreover, the Commissioner points out that ALJ gave great weight to the opinion of Dr. Daniels, who opined that Plaintiff would not have any limitations with either gross or fine manipulation.  (Tr. 313). Accordingly, the Commissioner asks this Court should find that ALJ did not commit reversible error in how he weighed the medical opinion evidence, and the decision that plaintiff did not have gross or fine  limitations on his right side should be upheld by this Court.

Plaintiff also contends that the ALJ should have given greater weight to the opinion of his treating psychologist, B. Bajon, Ph.D.  According to the Commissioner, the ALJ provided good reasons for declining to give Dr. Bajon's

opinion controlling or significant weight.  Dr. Bajon opined that plaintiff had marked limitations in his ability to perform many basic work functions.  (Tr. 399-400).  However, the ALJ explained that "Dr. Bajon did not provide an objective analysis of the claimant's psychological condition.  (Tr. 38).  And, as the ALJ pointed out, Dr. Bajon failed to provide a diagnosis that would support his opinion.  (Tr. 38). The ALJ also explained that Dr. Bajon never conducted objective testing as to plaintiff's mental problems.  (Tr. 37).  The ALJ further noted that Dr. Bajon's opinion was inconsistent with plaintiff's own reported limitations.  (Tr. 37).  Specifically, plaintiff's ability to function with little assistance is inconsistent with the severe restrictions Dr. Bajon placed on him.  Thus, the Commissioner contends that the ALJ reasonably declined to give Dr. Bajon's opinions controlling or great weight.

Plaintiff also argues that the ALJ erred by giving greater weight to the opinions of the state agency doctors.  The Sixth Circuit has previously found that "the ALJ's decision to accord greater weight to state agency physicians over [Plaintiff]'s treating sources was not, by itself, reversible error."  *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).  Thus, a state agency reviewing physician, such as Dr. Khan or Dr. Daniels, is independent and unbiased, and their opinions are based on their familiarity with the disability program and their expertise in determining functional limitations.  *See* 20 C.F.R.

2:12-cv-13078-LPZ-MJH   Doc # 20   Filed 08/19/13   Pg 27 of 54   Pg ID 559

§ 416.927(f)(2)(i); *see also Lucido v. Barnhart*, 121 Fed.Appx. 619, 622 (6th Cir.

2005) ("[T]he reviewing physicians . . . have the strongest claims to neutrality.").

Once the ALJ reasonably discounted Dr. Bajon's opinion, he properly evaluated

the other opinions under the factors set forth in 20 C.F.R. § 416.927(d).  The ALJ

reasonably gave more weight to Dr. Khan and Dr. Daniels because these opinions

were well supported by the medical evidence.  (Tr. 36-38).  The Commissioner

also points out that ALJ did not reject Dr. Bajon's opinion simply because he

arrived at a different conclusion than the state agency doctors.  Rather, the ALJ

properly discounted Dr. Bajon's opinion because it was not supported by the

evidence, but conversely, gave greater weight to the state agency doctors' opinions

because they were supported by the evidence.  (Tr. 38).  The substantial evidence

standard presupposes that there is a zone of choice within which the ALJ can make

a decision without interference by the courts.  *Blakely v. Comm'r of Soc. Sec.*, 581

F. 3d 399, 406 (6th Cir. 2009).  Because the ALJ reasonably evaluated the medical

opinions of record, the Commissioner maintains that his findings should be

affirmed.

　　　At the administrative hearing, the ALJ asked the vocational expert to assume

a hypothetical individual who shared plaintiff's age, education, work experience,

and RFC.  (Tr. 65- 66).  Based on those assumptions, the vocational expert testified

that such an individual could perform approximately 1,000 inspection positions,

1,000 sorter positions, 500 surveillance system monitor positions, and 1,000 various assembly positions.  (Tr. 66).  The vocational expert provided Dictionary of Occupational Title (DOT) numbers for each position and testified that her testimony was consistent with the DOT.  (Tr. 65-66).  The Commissioner acknowledges that plaintiff correctly points out that the DOT numbers provided by the vocational expert do not correspond to the sorter and assembly worker positions identified by the vocational expert.  However, "nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge."  *Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir. 2008).  Because the ALJ was not aware of any discrepancy between the DOT and the vocational expert's testimony, the Commissioner contends that he was entitled to rely on the vocational expert's findings and assurances that her testimony was consistent with the DOT.  And, the Commissioner further points out that even if this Court were to exclude the "sorter" and "assembly worker" positions from consideration, the ALJ still identified a significant number of inspection (1,000 jobs) and surveillance monitor (500 jobs) jobs that a person with plaintiff's background and RFC could perform (Tr. 66).  *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 positions were a significant numbers of jobs); *Barker v.*

*Sec'y of HHS*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 positions were within the parameters of a significant number of jobs); *see Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs are significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 positions are significant number); *Nix v. Sullivan*, 744 F. Supp. 855, 863 (N.D. Ill. 1990) (675 jobs are significant number), aff'd, 936 F.2d 575 (7th Cir. 1991).

Plaintiff next argues that he would be unable to perform the job of "surveillance system monitor" because the ALJ's hypothetical question included a limitation to "simple" work whereas the surveillance system monitor position is a "semi-skilled" job. The Commissioner points out that plaintiff has not cited any authority indicating that a limitation to "simple" work would preclude "semi-skilled" jobs, and plaintiff's assumption that the "vocational expert understood that [a limitation to simple work meant] 'unskilled' work" is not supported by the record. Rather, according to the Commissioner, the fact that the vocational expert identified a semi-skilled job in response to the ALJ's hypothetical question limiting plaintiff to simple work indicates that the vocational expert did not equate "simple" work with "unskilled" work.

Plaintiff also asserts that he would be unable to work because he would be "off task" for more than 20% of the day. Plaintiff contends that Dr. Bajon's assessment supports such a limitation. However, according to the Commissioner,

Report and Recommendation
Cross-Motions for Summary Judgment
*Stachura v. Comm'r*; Case No. 12-13078

the ALJ properly discounted Dr. Bajon's opinion and was thus not required to rely on his unsupported assessment. A hypothetical question must only include a claimant's substantiated impairments and limitations. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001); *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993). Because the medical record does not support a finding that plaintiff would be off task 20% of the time, the ALJ was not required to include such a limitation in the hypothetical question. Accordingly, the Commissioner maintains that the ALJ did not err by relying on the vocational expert's response to a question that excluded such a limitation.

A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

Report and Recommendation
Cross-Motions for Summary Judgment
*Stachura v. Comm'r*; Case No. 12-13078

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

    1.    Listings 1.00 and 3.00

Plaintiff argues that the ALJ stated that he considered Listings 1.00 and 3.00,

but did not actually consider the "B criteria" for those specific listings and did not

identify which listings in particular in those categories that he considered.  Plaintiff

bears the burden of establishing that he meets a particular listing and plaintiff's

argument in this regard is not sufficiently developed such that the undersigned can

determine what Listings plaintiff contends that he satisfies under 1.00 or 3.00.

Plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to

the Court to scour the record to support this claim.  *See McPherson v. Kelsey*, 125

F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.  It

is not sufficient for a party to mention a possible argument in a most skeletal way,

leaving the court to ... put flesh on its bones.") (citation omitted); *Crocker v.*

*Comm'r of Soc. Sec.*, 2010 WL 882831, at *6 (W.D. Mich. Mar. 9, 2010) ("This

court need not make the lawyer's case by scouring the party's various submissions

to piece together appropriate arguments.") (citation omitted).  In the view of the undersigned, plaintiff's argument is wholly insufficient and undeveloped.

In addition, while the ALJ did not specify in his decision which Listing under 3.00 he considered, plaintiff argued below that he met Listing 3.02.  (Dkt. 10-6, Pg ID 272).  And more importantly, plaintiff has admitted that he does not satisfy Listing.  *See id*. ("We would assert [plaintiff's] chronic obstructive pulmonary disease meets this listing.  While his numbers were slightly above the FEV1 value indicated on the chart, it is well documented [plaintiff's] lungs are functioning at less than 50% capacity, rendering him extreme exertional and non-exertional limitations.").  It is well-established that a claimant must meet every element of a Listing before the Commissioner may conclude that he is disabled at step three.  *Duncan v. Sec'y of Health & Human Servs*., 801 F.2d 847, 855 (6th Cir. 1986).  Indeed, an impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify."  *Zebley*, 493 U.S. at 530.  Thus, even if there were an error in the ALJ's step three analysis as to this Listing, the undersigned finds that it is harmless because plaintiff admits that he cannot strictly satisfy the requirements of Listing 3.02.

As to Listing 1.0, it does not appear that plaintiff even argued that the ALJ should consider this Listing.  (Dkt. 10-6, Pg ID 263-283).  Thus, the undersigned finds that remand is not necessary under *Reynolds v. Commissioner of Social*

*Security*, 424 Fed.Appx. 411 (6th Cir. 2011). In *Reynolds*, the ALJ compared the

medical evidence concerning only the claimant's severe mental impairment to the

requirements for a particular associated Listed Impairment. The court found,

however, that the ALJ failed to complete the analysis, noting that, "Specifically,

Reynolds claims she qualifies as disabled under subsection 1.04, Disorders of the

Spine." *Id*. at *3. Noting that the preamble to Section 1.00 required consideration

of medical equivalence, the *Reynolds* court remanded the matter to the ALJ,

because he had "skipped an entire step of the necessary analysis," and the error

was not harmless. The court also found that the evidence that Reynolds had put

forth could have met Listing 1.04. *Id*. at *4.

The Sixth Circuit has distinguished *Reynolds*, concluding that where the

plaintiff did not argue that he met a particular listing at the administrative hearing,

remand was not required:

> Malone now argues that the ALJ erred by failing to make
> specific findings on the issue of whether his impairments
> were equivalent to one of the impairments that is listed in
> Appendix 1 of the regulations. He apparently argues that
> the ALJ should have made a specific finding on the issue
> of whether his musculoskeletal impairments were
> equivalent to the impairments that are described in
> Listing 1.02 of the Appendix. Malone had the burden of
> showing that his impairments were equal or equivalent to
> a listed impairment. *See Foster v. Halter*, 279 F.3d 348,
> 354 (6th Cir. 2001). To meet that burden Malone was
> required to point to medical signs and laboratory findings
> that are at least equal to a listed impairment in duration

> and severity. *See id*. ... Malone did not argue that he had
> a listed impairment at his administrative hearing, even
> though he was represented by counsel at that time.
> Nevertheless, the ALJ expressly found that Malone did
> not have an impairment or combination of impairments
> that was equal or equivalent to any of the impairments
> that are described in Appendix 1. This finding is
> supported by substantial evidence in the record ... .
> "[T]he ALJ's findings of fact should not be disturbed
> unless we are persuaded that his findings are legally
> insufficient." *Dorton v. Heckler*, 789 F.2d 363, 367 (6th
> Cir. 1986). Malone has not met that burden here.

*Malone v. Commissioner of Social Security*, 2012 WL 5974463 (6th Cir. 2012).

As in *Malone*, no specific listing under 1.00 was specified by plaintiff (or even

1.00 generally). Further, as found by the ALJ, plaintiff has not identified medical

evidence which could satisfy any Listed Impairment under 1.00. Thus, the

undersigned finds no basis to remand this matter for further evaluation of Listing

1.00.

      2.    Listing 11.04

     Although "'Sixth Circuit case law does not require a heightened articulation

standard at step three of the sequential evaluation process,' . . . the regulations state

that an ALJ should review all evidence of impairments to see if the sum of

impairments is medically equal to a 'listed impairment.'" *See Waller v. Astrue*,

2012 WL 6771844, at *3 (N.D. Ohio Dec. 7, 2012), *adopted by* 2013 WL 57046

(N.D. Ohio Jan. 3, 2013) (citations omitted). For meaningful judicial review, the

ALJ must actually evaluate the evidence, compare it to the criteria of the listing, and give an explained conclusion. *See Reynolds*, 424 Fed.Appx. at 416.   Absent such evaluation and explanation, the ALJ's finding that plaintiff's impairments did not equal a listing is not supported by substantial evidence, thus requiring a remand. *Id.*; *see also Raymond v. Comm'r of Soc. Sec.*, 2012 WL 2872152, at *4 (N.D. Ohio 2012) (collecting cases where "this Court has reversed where the ALJ made unaffirmable cursory or summary declarations that a claimant did not meet or equal a listing without evidence of that effect from a medical expert or without an extensive, reviewable discussion on the record."), adopted by 2012 WL 2872462 (N.D. Ohio 2012).

As described above, in *Reynolds*, the Sixth Circuit examined a very similar issue.  The ALJ in *Reynolds* ruled that the claimant suffered from both a physical and mental severe impairment. *Id.* at 415.  At the third step in the disability analysis, the ALJ compared the claimant's impairments with specifically identified listings and concluded that neither impairment met or equaled listing level. *Id.* The ALJ explained why the claimant's mental impairment did not meet the relevant listing, but failed to offer any commentary as to why the claimant's physical impairment did not meet or equal listing level. *Id.*  In explaining the ALJ's error, the Court indicated that "the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments[, p]ut simply,

he skipped an entire step of the necessary analysis." *Id*. at 416.  The Court explained that "the ALJ needed to actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review.  Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id*.  The Court remanded the case, finding that the ALJ's "hopelessly inadequate step three ruling" precluded meaningful judicial review.  *Id.*

In this case, contrary to the discussion above regarding Listing 1.00, plaintiff specifically argued to the ALJ that he met Listing 11.04.  The ALJ, however, provided no analysis whatsoever or even mentioned this Listing, let alone any evaluation and explanation sufficient for meaningful review.  While the Commissioner's motion contains some discussion as to why plaintiff does not  not meet the criteria of Listing 11.04, the ALJ did not engage in that same analysis and "this court cannot engage in post-hoc rationalizations" but must judge propriety of the ALJ's decision solely by the grounds invoked by the ALJ.  *Waller*, 2012 WL 6771844, at *4 (citations omitted).  Thus, this matter should be remanded for further consideration under Listing 11.04.

3.    Listing 12.00/Treating Physician Opinion

The ALJ expressly considered Listing 12.02 and 12.04, but did not expressly consider 12.06.  According to plaintiff, this is reversible error.  However,

plaintiff's complaint seems to be with the assessment of the "B criteria," which the ALJ expressly considered as it relates to Listings 12.02 and 12.04. Given that the "B criteria" are the same for all three Listings (Dkt. 10-7, Pg ID 386) and the expert medical consultant who completed the PRTF and on whom the ALJ relied, considered the "B criteria" of all three Listings, the undersigned fails to see any substantive error in the ALJ's analysis.

Plaintiff's real complaint is focused on the actual "B criteria" findings made by the ALJ because they are contrary to the opinions of plaintiff's treating psychiatrist. The nub of plaintiff's objection is whether the ALJ correctly followed the treating physician rule and gave sufficiently good reasons for rejecting Dr. Bajon's opinions. According to Dr. Bajon, he has been treating plaintiff for 20 plus years. However, while Dr. Bajon provided a series of narrative letters articulating his opinions of plaintiff's mental limitations, there is not a single treatment note in the record.

A treating physician's opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th

Cir. 2001); *Kidd v. Commissioner*, 2008 WL 2564784, at * 4 (6th Cir. 2008). An

opinion that is based on the claimant's reporting of his symptoms is not entitled to

controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d

146, 151 (6th Cir. 1990); *see also Smith v. Commissioner*, 482 F.3d 873, 875-76

(6th Cir. 2007). Dr. Bajon's opinions were not supported by any treatment records,

contemporaneous clinical observations, or contemporaneous records of the various

treatment modalities he described. Notably, this issue was identified by the ALJ

during the administrative hearing, additional records were requested, and none

were provided. (Dkt. 10-2, Pg ID 87-91). In the view of the undersigned, Dr.

Bajon's letter opinions were not entitled to controlling weight. *See e.g.*, *Colvard v.

Comm'r of Soc. Sec.*, 2010 WL 3522277, *10 (E.D. Mich. 2010).

Even when a treating source's medical opinion is not given controlling

weight because it is not well-supported by medically acceptable clinical and

laboratory diagnostic techniques or is inconsistent with other substantial evidence

in the record, the opinion should not necessarily be completely rejected; the weight

to be given to the opinion is determined by a set of factors that guides the weight

given to the medical opinion, including treatment relationship, supportability,

consistency, specialization, and other factors. *See* Titles II and XVI: Giving

Controlling Weight to Treating Source Medical Opinions, SSR 96-2p; 1996 WL

374188 (SSA July 2, 1996); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*,

170 Fed.Appx. 369, 372 (6th Cir. 2006).  The absence of progress notes and other contemporaneous medical records regarding the treatment provided by Dr. Bajon "for the period at issue entitles his unadorned opinion to virtually no weight." *Bruza v. Comm'r of Soc. Sec.*, 2008 WL 3979261 (W.D. Mich. 2008).  Thus, in the view of the undersigned, the ALJ's decision easily satisfies the procedural requirement of giving "good reasons" for not giving controlling weight to the opinions of Dr. Bajon.

    4.    Credibility

    In the view of the undersigned, the ALJ's credibility analysis was thorough, detailed, and well-supported by the evidence of record.  The undersigned agrees with the Commissioner that the ALJ reasonably noted that plaintiff provided testimony inconsistent with the medical evidence.  For example, plaintiff stated that he had difficulty breathing and that he used his inhaler up to six times per day and used Advair twice per day, but the medical record shows that he discontinued using Advair and albuterol as early as December 2007.  (Tr. 59, 278).  The Commissioner also correctly points out that plaintiff did not consistently follow his doctor's recommendations during the period he claims he was disabled. While plaintiff reported scant breathing problems to Dr. Bhan, in July 2008, Dr. Bhan "stressed the importance of using Advair as directed," after plaintiff stated that he did not use Advair.  (Tr. 281).  Plaintiff's breathing problems were also

exacerbated by his smoking; Dr. Bhan encouraged plaintiff to quit smoking, but as of December 2008, plaintiff admitted that he smoked one pack of cigarettes per day and occasionally smoked marijuana. (Tr. 294). In May 2009, plaintiff reported that he continued to smoke half a pack of cigarettes per day. (Tr. 305). Contrary to plaintiff's assertion, plaintiff's failure to stop smoking despite being instructed to by his physicians, is an appropriate factor when assessing the plaintiff's credibility. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988); *Galinis v. Comm'r of Soc. Sec.*, 2008 WL 360656, at *8 (W.D. Mich. 2008). While plaintiff reported some difficulty using his CPAP machine, the Commissioner's observation that plaintiff explored no alternatives or sought assistance with using this prescribed therapy is well-taken. Thus, the undersigned concludes that the ALJ reasonably considered plaintiff's failure to comply with treatment recommendations as part of his credibility assessment.

The undersigned also agrees with the Commissioner that the ALJ properly noted that there was a significant discrepancy between what he reported to consultative examiners and how he described his condition. Plaintiff alleged that he had panic attacks up to five times per week, but this was not reflected in his medical record. The ALJ also reasonably pointed out that plaintiff's testimony concerning his difficulty with walking was inconsistent with the evidence. Plaintiff reported that he dragged his right foot and that he would sometimes fall

when his leg buckled. (Tr. 65). Plaintiff also reported that he used a cane but lost it and never replaced it. (Tr. 53). Under these circumstances, the ALJ reasonably explained that it was "difficult to understand why a person who allegedly had difficulty walking and risked falling would not use an assistive device," and found that plaintiff may be overstating his symptoms.

The undersigned agrees with the Commissioner that plaintiff's claim that he needed constant attention, contradicts his earlier reports that he lived by himself and could function alone with little assistance. (Tr. 59, 62). Plaintiff's father stated that he only visited his son once per week to assist with shopping. (Tr. 185). The ALJ also appropriately questioned plaintiff's limited treatment record, noting that there is a reasonable expectation that a claimant would seek examination and treatment if his condition was severe enough to be disabling. (Tr. 34). Plaintiff contends, however, that because he had a mental impairment, it is impermissible for the ALJ to consider whether he sought medical treatment. The undersigned agrees with the Commissioner that plaintiff has not shown that his mental condition was so severe that it would have interfered with his ability to seek treatment. In addition, plaintiff's claim that he was not able to seek treatment regularly because of his mental conditions is contrary to his treating psychiatrist's statements that he treated with him on a regular basis for over 20 years. While plaintiff may disagree with the ALJ's credibility assessment, he has failed to

demonstrate a basis for overturning the finding, especially in light of the great
weight and deference that an ALJ's credibility finding is entitled to on review.
Because the ALJ's credibility finding is supported by substantial evidence, the
undersigned concludes that it should not be disturbed.

### 5.     Consulting medical opinions

The undersigned is also not persuaded that the ALJ erred in his treatment of
the opinion of Suzanne Kenna, M.A., and Judith Kovach, Ph.D., including that he
could only recall one object after three minutes during a memory test.  The
undersigned agrees with the Commissioner that plaintiff has not explained how the
isolated notation contained in Dr. Kovach's and Ms. Kenna's report undermines
the ALJ's RFC assessment.  It is apparent that much of this opinion was based on
Dr. Bajon's reports.  However, those opinions have been appropriately deemed not
due any weight.  Thus, a consulting opinion that relies on Dr. Bajon's reports is
also not due much weight, in the view of the undersigned.

Dr. Rojas noted that plaintiff would not be able to perform well when
exposed to extreme temperature changes or polluted environments.  (Tr. 295).  The
ALJ thus restricted plaintiff to "relatively clean" working environments with low
levels of pollutants "such as dust, fumes, and gases, and stable temperatures, and
avoiding extreme heat and cold."  (Tr. 33).  Plaintiff contends that a difference
exists between Dr. Rojas's opinion and the ALJ's RFC assessment, but according

to the Commissioner, any difference in language that the ALJ used is immaterial as the ALJ's RFC assessment remained consistent with Dr. Rojas's opinion.  The undersigned fails to see any significant difference between the ALJ's limitation to "low levels of pollutants" and Dr. Rojas's restriction against working in "polluted environments."

Plaintiff also argues that the ALJ did not account for Dr. Rojas's opinion that he "would not be able to perform in occupations requiring a great deal of dexterity of his right upper limb."  (Tr. 295).  The Commissioner acknowledges that the ALJ did not expressly discuss plaintiff's dexterity, but maintains that the ALJ only permitted plaintiff to pushing and pulling motions with his dominant left hand and restricted the total amount of weight that plaintiff could carry or lift to no more than ten pounds.  (Tr. 31).  The undersigned agrees with the Commissioner and also concludes that the ALJ appropriately gave great weight to the opinion of Dr. Daniels, who opined that plaintiff would not have any limitations with either gross or fine manipulation.  (Tr. 313).  "Given the number of physicians and the variation in their opinions, almost any decision that the ALJ could have rendered would have required him to discredit the opinion of at least one physician." *Gaskin v. Comm'r of Soc. Sec.*, 280 Fed.Appx. 472, 476 (6th Cir. 2008). Accordingly, the undersigned finds no reversible error in how the ALJ weighed the medical opinion evidence, and the decision that plaintiff did not have gross or fine

limitations on his right side should be upheld by this Court.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

6.    Obesity

Obesity, by itself, does not constitute a disability and is not qualified as a "listed impairment."  SSR 02-1p, 2000 WL 628049, at *1.  "Social Security Ruling 02-01p does not mandate a particular mode of analysis.  It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations."  *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2008).  Accordingly, the Sixth Circuit has held compliance with SSR 02-1p only requires demonstration that the ALJ "considered" obesity.  *See id.* ("It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.").  Further, the administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from the condition.  *Coldiron v. Comm'r of Soc. Sec.*, 2010 WL 3199693, at *7 (6th Cir. 2010), citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  Here, the ALJ expressly considered plaintiff's weight in his decision.  (Dkt. 10-2, Pg ID 67).  No treating physician offered any opinion that plaintiff's obesity

caused any additional limitations and tellingly, plaintiff offers no evidence that his obesity caused any additional functional limitations beyond those found by the ALJ.  Accordingly, plaintiff's claim of error should be denied.

       7.    Vocational expert testimony

Plaintiff also argues that the ALJ erred in relying on the VE's testimony because it is not consistent with the DOT, some of the DOT numbers do not exist, and the SVP of one job indicates semi-skilled work outside plaintiff's RFC as found by the ALJ.  However, the Sixth Circuit has held that "the ALJ and consulting vocational experts are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that the ALJ did not err in evaluating the testimony of a VE when the VE testified that skilled occupations were available to an unskilled claimant), citing *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995).  The Sixth Circuit has explained that because "not all occupations are included in the DOT and the VE may use terminology that differs from the terms used in the DOT . . . the mere fact that the DOT does not list occupations with those precise terms does not establish that they do not exist." *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 168 (6th Cir. 2009); *see also* SSR 00-4p ("The DOT contains information about most, but not all, occupations.").  "[N]either the

DOT or [the VE's testimony] automatically trumps when there is a conflict."
*Wright*, 321 F.3d at 616; SSR 00-4p. Thus, the fact that the job titles to which the
VE testifies does not line up perfectly with the DOT does not render the VE's
testimony inconsistent with the DOT as a whole. *See Lindsley v. Comm'r of Soc.
Sec.*, 560 F.3d 601, 605 (6th Cir. 2009).

The ALJ here did all that was required by Social Security regulations by
inquiring about conflict. (Dkt. 10-2, Pg ID 98). Only if the VE testifies that there
is a conflict must the ALJ "obtain a reasonable explanation for . . . [the] apparent
conflict." *Lindsley*, 560 F.3d at 603. Further, the ALJ afforded plaintiff's
representative an opportunity to cross-examine the VE, and the representative did
so. (Dkt. 10-2, Pg ID 100-102). Thus, once the VE credibly testified that there
was no conflict between her testimony and the DOT, and plaintiff was afforded a
full opportunity to cross-examine, the ALJ had no duty to interrogate the VE
further. *See Lindsley*, 560 F.3d at 603. To the extent plaintiff seeks to point out
any discrepancy now, it is not grounds for remand because the ALJ satisfied his
legal duty to inquire about conflicts at the time of the hearing, and plaintiff failed
to point out the alleged conflict at the administrative level. Thus, this claim of
error should be denied.

In addition, based on the analysis set forth above regarding the ALJ's
appropriate analysis of the treating physician evidence, the other medical opinion

evidence of record, and plaintiff's credibility, plaintiff's remaining claims of error

regarding the ALJ hypothetical questions to the VE are equally without merit.  This

is so because the ALJ need only include those limitations he finds credible in the

hypothetical question and the undersigned concludes, based on the analysis set

forth above, that the ALJ's RFC was appropriate and supported by the substantial

evidence of record.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in

part, that defendant's motion for summary judgment be **GRANTED** in part and

**DENIED** part, and that the findings of the Commissioner be **REVERSED** in part

and **AFFIRMED** in part, and that this matter be **REMANDED** for further

proceedings under sentence four.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 19, 2013              s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>August 19, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Eva L. Guerra, Lynn Marie Dodge, AUSA, and Niranjan Emani, Social Security Administration</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Stachura v. Comm'r*; Case No. 12-13078
